United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 18, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-31800** |
| **GERALD JOSEPH DIMES,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | **CHAPTER 13** |

## MEMORANDUM OPINION

Gerald Joseph Dimes contests U.S. Bank Trust National Association's attempt to change his mortgage interest rate from 5.49% to the contractual default rate of 20%, and contests U.S. Bank Trust National Association's attempt to change the amount of his monthly mortgage principal and interest payment from $907.46 to $2,621.12.[1] Gerald Joseph Dimes argues that his confirmed chapter 13 plan cannot be re-litigated due to *res judicata*.[2] But U.S. Bank Trust National Association argues that a monthly mortgage payment can be modified, even in a confirmed chapter 13 plan.[3] On March 5, 2026, this Court conducted an evidentiary hearing.

For the reasons stated herein, Gerald Joseph Dimes's objection to U.S. Bank Trust National Association's notice of mortgage payment change is sustained, and Gerald Joseph Dimes's monthly mortgage payment that he owes to U.S. Bank Trust National Association will remain at the confirmed chapter 13 plan amount of $907.46, with an interest rate of 5.49%.

### I. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 ("*Rule*"), which is made applicable to adversary proceedings pursuant

---

[1] ECF No. 79, at 2-4.
[2] ECF No. 79, at 2-3.
[3] *See generally* ECF No. 105.

to Federal Rule of Bankruptcy Procedure 7052 ("*Bankruptcy Rule*"). To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

**A. Background**

1. On March 31, 2025, (the "*Petition Date*") Gerald Joseph Dimes ("*Debtor*") filed for bankruptcy protection under chapter 13 of the Bankruptcy Code[4] (the "*Petition*") initiating the instant bankruptcy case.

2. Debtor owns real property located at 140 N. Betty Lane, Avondale, LA 70094 (the "*Property*").[5] On January 21, 2022, Citibank, N.A. Not in Its Individual Capacity but Solely as Trustee of Colt 2022-5 Trust ("*Citibank*") agreed in the Promissory Note (the "*Note*") to lend Debtor $160,000 to finance the purchase of the Property.[6]

3. The Note provides for a 30-year payment plan at a fixed interest rate of 5.49% and a combined monthly principal and interest rate payment amount of $907.46.[7] According to the Note, if the borrower falls 30 days or more behind on payments, the default interest rate of 20% goes into effect until the total past-due amount is paid.[8]

4. Debtor fell behind on the payments in 2023 and Citibank increased the interest rate from 5.49% to 20%, beginning on September 1, 2023.[9]

5. On June 2, 2025, Citibank filed its Proof of Claim ("*POC/Claim*"), asserting a total debt of $223,415.18, pre-petition arrears of $68,375.11, and post-petition monthly payments of $3,140.41 (comprised of $2,621.12 in Principal & Interest and $519.29 in escrow).[10] The amounts asserted for the past due delinquent payments and the post-petition payments reflect the default interest rate of 20%.[11] Per U.S. Bank, Debtor missed nineteen (19) monthly payments before the instant bankruptcy case was filed.[12]

6. On June 10, 2025, Debtor filed an objection to Citibank's POC ("*Debtor's Objection to*

---

[4] ECF No. 1. Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C.
[5] ECF No. 84, at 1.
[6] ECF No. 105, at 1.
[7] ECF No. 91-1, at 8-9.
[8] *See* ECF No. 91-1, at 8-11.
[9] *See* ECF No. 91-1, at 6.
[10] ECF No. 91-1, at 3-5.
[11] ECF No. 91-1, at 3-5.
[12] ECF No. 105, at 3.

*Claim*").[13]

7. On July 15, 2025, this Court sustained Debtor's Objection and entered an order disallowing Citibank's POC ("*Order Sustaining Claim Objection*").[14]

8. On July 31, 2025, Debtor filed a "Motion for Relief from Judgment or Order Pursuant to Bankruptcy Rule 9024 ("*Motion for Relief from Judgment*").[15]

9. On September 10, 2025, Debtor filed his chapter 13 form plan (the "*Plan*").[16]

10. On September 11, 2025, the Court granted Debtor's Motion for Relief from Judgment ("*Order Granting Motion for Relief from Judgment*").[17]

11. On September 11, 2025, the Court entered its "Order Confirming Chapter 13 Plan & Valuing Collateral Pursuant to 11 U.S.C. § 506" ("*Plan Confirmation Order*").[18]

12. On January 9, 2026, Citibank filed the "Transfer of Claim Other Than for Security"[19] transferring its Claim to U.S. Bank Trust National Association, Not in Its Individual Capacity but Solely as Owner Trustee for RCAF Acquisition Trust ("*U.S. Bank*").

13. On January 30, 2026, U.S. Bank filed its "Notice of Mortgage Payment Change" ("*Notice of Payment Change*").[20]

14. On February 4, 2026, Debtor filed an "Objection to Notice of Mortgage Payment Change."[21]

15. On February 25, 2026, U.S. Bank filed its "Response to Objection to Notice of Mortgage Payment Change and Determination of Mortgage Payment Amount" ("*Response to the Objection to the Notice of Payment Change*").[22]

16. On March 5, 2026, this Court held an evidentiary hearing and ordered briefing.

17. On March 18, 2026, U.S. Bank filed its "Secured Creditor's Brief in Support."[23]

18. On March 19, 2026, Debtor filed his "Brief in Support of Objection to Notice of Mortgage

---

[13] ECF No. 37.
[14] ECF No. 48.
[15] ECF No. 56.
[16] ECF No. 63; *Southern District of Texas Uniform Plan and Motion for Valuation of Collateral*, effective July 15, 2025.
[17] ECF No. 64.
[18] ECF No. 66.
[19] ECF No. 69.
[20] ECF No. 73.
[21] ECF No. 79.
[22] ECF No. 84.
[23] ECF No. 105.

Payment Change."[24]

19. The Court now issues the instant Memorandum Opinion.

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[25] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[26] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) this proceeding contains core matters, as ruling on the Notice of Payment Change involves the administration of this estate.[27] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[28]

This Court may only hear a case in which venue is proper.[29] 28 U.S.C. § 1408 provides that a bankruptcy proceeding may be commenced "in the district– (1) in which the . . . residence . . . of the person or entity that is the subject of such case ha[s] been located for the one hundred and eighty days immediately preceding such commencement."[30] In his Petition, Debtor states his current principal residence is in Avondale, Louisiana, but he also states that he resided in the

---

[24] ECF No. 106.
[25] *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[26] 28 U.S.C. § 157(a); *see also Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[27] *See* 11 U.S.C. § 157(b)(2)(A).
[28] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[29] 28 U.S.C. § 1408.
[30] 28 U.S.C. § 1408(1).

Southern District of Texas during the 180 days prior to the Petition Date.[31] Therefore, venue of this proceeding is proper.[32]

### B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[33] The objection to the Notice of Payment Change pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court concludes that the narrow limitation imposed by *Stern v. Marshall* does not prohibit this Court from entering a final order here.[34] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented impliedly to adjudication of this dispute by this Court.[35] None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent.[36] Thus, this Court wields the constitutional authority to enter a final order here.

### III. ANALYSIS

U.S. Bank alleges in its Notice of Payment Change that Debtor's monthly mortgage payment and interest rate should increase to the Note's default amount of $2,621.12 and 20%,

---

[31] ECF No. 1, at 2, ¶ 6.
[32] 28 U.S.C. § 1408(1).
[33] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[34] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern*'s limited holding herein.") (quoting *Stern*, 564 U.S. at 475, 503).
[35] *Wellness Int'l Network, Ltd.*, 135 S. Ct. at 1947 ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[36] *See id.*

respectively, because the interest rate and payment amount should be determined under non-bankruptcy law.[37] But Debtor contends that he only owes the chapter 13 Plan's mortgage payment amount of $907.46 and interest rate of 5.49% because the Plan was confirmed and *res judicata* bars re-litigation of the Plan.[38]

### A. The Chapter 13 Plan

Paragraph 8A of the confirmed chapter 13 Plan provides that U.S. Bank's Claim will be paid through a monthly $907.46 principal and interest payment, combined with a $519.29 escrow payment for a total $1,426.75 monthly payment.[39]  U.S. Bank's Notice of Payment Change states that U.S. Bank changed the monthly mortgage payment to $2,621.12 at the Note's default interest rate of 20%, effective March 1, 2026.[40] But Debtor argues that the monthly mortgage payment amount should be $907.46 at a 5.49% interest rate based on: (1) *res judicata*; (2) claim disallowance; (3) failure of U.S. Bank to attach a rate change notice to its Form 410S1; and (4) U.S. Bank is not entitled to the Note's default interest rate of 20% under the Plan.[41] The Court will consider each argument in turn.

### 1. Whether *res judicata* applies

The Plan was confirmed without objection from Citibank and so under the doctrine of *res judicata*, the Plan's terms cannot be relitigated.[42] The Fifth Circuit has held that a confirmed bankruptcy plan is entitled to the effect of *res judicata*.[43] The elements necessary for application

---

[37] ECF No. 105, at 2-4.
[38] ECF No. 106, at 5-7.
[39] ECF No. 63, at 4.
[40] ECF No. 91-6, at 1.
[41] ECF No. 79, at 2-3.
[42] *In re Chestnut*, 356 F. App'x 732, 737-38 (5th Cir. 2009).
[43] *Id.* (holding that *res judicata* applies to a confirmed plan "of a creditor that had notice of the plan and an opportunity to object." Otherwise, it would be contrary to 11 U.S.C. § 1327(a) and would "disturb th[e] reliance" of a chapter 13 Trustee in distribution of the funds); *see Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010).

of *res judicata* are: "[1] the parties must be identical in both suits, [2] the prior judgment must have been rendered by a court of competent jurisdiction, [3] there must have been a final judgment on the merits, and [4] the same cause of action must be involved in both cases."[44] Furthermore, "[t]he party asserting that *res judicata* bars an action bears the burden to establish the elements of the doctrine as a matter of law."[45] The Court will next examine the four elements of *res judicata*.

First, *res judicata* requires identical parties in both proceedings.[46] This element requiring identical parties is satisfied if the parties are either physically identical in both proceedings or are identical in interest, meaning they are "persons whose interests are properly placed before the court by someone with standing to represent them."[47] Here, Citibank owned the Claim at Plan confirmation on September 11, 2025.[48] On January 9, 2026, Citibank transferred the Claim to U.S. Bank.[49] Therefore, U.S. Bank now owns the same Claim that Citibank owned at Plan confirmation. Furthermore, because Citibank owned the Claim at Plan confirmation, it had standing to object to the Plan's confirmation.[50] Therefore, U.S. Bank's interest in the Claim was properly represented by Citibank at Plan confirmation.[51] Thus, under the doctrine of *res judicata*, because Citibank owned the Claim at Plan confirmation and had standing to object at Plan confirmation, and U.S. Bank now owns the Claim, Citibank and U.S. Bank are identical parties in interest.

Second, *res judicata* requires a court of competent jurisdiction to have ruled on the initial proceeding. This Court ruled on the initial proceeding—Debtor's chapter 13 Plan confirmation—

---

[44] *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987) (quoting *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc)).

[45] *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 815 (S.D. Tex. 2013).

[46] *Southmark Props.*, 742 F.2d at 869 (quoting 1B J. Moore, *Moore's Federal Practice* ¶ 0.411[1] at 390–91 (2d ed. 1983)).

[47] *Id.*

[48] ECF No. 66.

[49] ECF No. 69.

[50] 11 U.S.C. § 1128(b).

[51] 11 U.S.C. § 1128(b).

on September 11, 2025.[52] As explained *supra*,[53] this Court has jurisdiction over the instant bankruptcy case under 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[54] 28 U.S.C. § 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[55] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), Plan confirmation was a core matter, as it involved the administration of this estate.[56] Thus, under 28 U.S.C. § 1334, this Court had jurisdiction over the prior proceeding, which was Plan confirmation.

Third, *res judicata* requires a final judgment on the merits in the prior proceeding. "[A] final judgment for purposes of *res judicata* must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum can be, and has been, finally disposed of."[57] Additionally, "an order confirming a plan finally disposes of a discrete issue within the larger bankruptcy case, constituting a final order."[58]

Here, the prior proceeding was this Court's confirmation of Debtor's chapter 13 Plan on September 11, 2025.[59] This Court's confirmation of Debtor's Plan was a final order because it "finally dispose[d] of a discrete issue," which was confirmation of the Plan.[60] Thus, under the doctrine of *res judicata*, this Court's Plan Confirmation Order was a final order on the merits in the prior proceeding.

---

[52] ECF No. 66.
[53] *See supra* II.A.
[54] *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[55] 28 U.S.C. § 157(a); *see also Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[56] *See* 11 U.S.C. § 157(b)(2)(A).
[57] *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987) (quoting *Southmark Props.*, 742 F.2d at 870 n.10 (5th Cir. 1984)).
[58] *In re Villarreal*, 639 B.R. 427, 432 (Bankr. S.D. Tex. 2022).
[59] ECF No. 66.
[60] *In re Villarreal*, 639 B.R. at 432.

Fourth, *res judicata* requires the same legal issue to be present in both the current and prior proceedings. In the Fifth Circuit, courts use the "transactional test" to determine whether an issue is identical to an issue ruled on in a prior proceeding.[61] Under the "transactional test," a claim is the same if it relates to the same "transaction, or series of transactions, out of which the [original] action arose."[62] When applying the transactional test, the critical issue is "whether the two actions under consideration are based on 'the same nucleus of operative facts,' rather than the type of relief requested, substantive theories advanced, or types of rights asserted."[63] The transactional test "is especially important in the context of [bankruptcy and] plan confirmation since the creditors need and deserve all available information so they can intelligently vote on the plan."[64]

Here, on January 21, 2022, Debtor signed the Note, under which he agreed to borrow money from Citibank and repay it to Citibank through monthly payments of $907.46 at an interest rate at 5.49%.[65] The issue in the prior proceeding was what the Debtor's mortgage payment terms should be under the confirmed Plan.[66] The Court ruled at Plan confirmation that the terms of Debtor's mortgage payments under the confirmed Plan would match the Note's terms and consist of monthly payments of $907.46 at an interest rate at 5.49%.[67]

But on January 30, 2026, after Plan confirmation, Citibank's successor-in-interest U.S. Bank filed a Notice of Payment Change which purports to change the payment terms to monthly payments of $2,621.12 at a 20% interest rate.[68] Thus, the issue in the second proceeding is whether Debtor's mortgage payment terms in the confirmed Plan should change to monthly payments of

---

[61] *ASARCO, LLC*, 514 B.R. at 200.
[62] *Id.*
[63] *Id.*
[64] *Id.* (citing *Westland Oil Dev. Corp. v. MCorp. Mgmt. Sols., Inc.*, 157 B.R. 100, 104 (S.D. Tex. 1993)).
[65] ECF No. 91-1, at 8-13.
[66] ECF No. 91-1, at 8-13.
[67] *See* ECF No. 66; ECF No. 63, at 4.
[68] ECF No. 73, at 1-3.

$2,621.12 at a 20% interest rate.[69] This second issue arises out of the same facts as the first: on January 21, 2022, Debtor signed the Note, under which he agreed to borrow money from Citibank and repay it to Citibank through monthly payments of $907.46 at an interest rate at 5.49%.[70] Thus, both the first and second issues arise from the same nucleus of facts. Therefore, under the doctrine of *res judicata*, the issue of the monthly mortgage payment amount and interest rate owed to U.S. Bank by Debtor now before the Court is identical to the issue the Court decided at Plan confirmation.

Thus, the doctrine of *res judicata* bars U.S. Bank from relitigating the Plan's interest rate because U.S. Bank and Citibank are identical parties in interest in both proceedings, this Court had jurisdiction to confirm the Plan at the September 11, 2025 Plan confirmation proceeding, the Plan confirmation was a final judgment on the merits because chapter 13 plan confirmation orders are final orders,[71] and the same legal issue is present in both proceedings because the issue of whether the monthly mortgage payment amount should be $907.46 and the interest rate should be 5.49% currently before the Court was the same issue before the Court at Plan confirmation. Therefore, under the doctrine of *res judicata*, Debtor has met his burden of proving that the elements of *res judicata* have been met, U.S. Bank cannot show that the payment terms should change under the Notice of Payment Change, and the Debtor's monthly mortgage payment of $907.46 and the interest rate at 5.49% as approved at Plan confirmation cannot be relitigated.

2. **Whether claim disallowance prohibits U.S. Bank from filing its Notice of Payment Change**

---

[69] ECF No. 73.
[70] ECF No. 91-1, at 8-13.
[71] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010).

Bankruptcy Rule 3002.1(d) provides that a notice of mortgage payment change must be filed as a supplement to a proof of claim.[72] The creditor who filed the notice of payment change must prove the payment change is allowable because "a notice of a payment change filed under Rule 3002.1(d) does not enjoy a *prima facie* presumption of validity."[73] Here, on June 3, 2025, Citibank filed its POC,[74] which was disallowed by the Court on July 15, 2025.[75] On January 9, 2026, Citibank transferred its Claim to U.S. Bank.[76] On January 30, 2026, U.S. Bank filed its Notice of Payment Change with this Court as a supplement to Citibank's disallowed POC.[77] But because the POC was disallowed, U.S. Bank cannot supplement it with its Notice of Payment Change.[78] Thus, under Bankruptcy Rule 3002.1(d), U.S. Bank's Notice of Payment Change is invalid.[79] Therefore, U.S. Bank has failed to meet its burden of proving that the mortgage payment change in the Notice of Payment Change is allowable, and so Debtor's monthly mortgage payment of $907.46 and the interest rate at 5.49% as approved at Plan confirmation cannot be modified by the Notice of Payment Change.

### 3. Whether U.S. Bank failed to allege a change in interest rate on its Form 410S1

U.S. Bank alleged a change to the interest rate on its Form 410S1. Form 410S1 must be filed if there are "changes to post-petition monthly installment payments, fees, expenses, or charges that the mortgagee asserts are recoverable from the debtor . . . ."[80] Form 410S1 requires

---

[72] Fed. R. Bankr. P. 3002.1(d).

[73] *In re Taylor*, No. 12-11463-NPO, 2013 WL 1276507, at *9 (Bankr. N.D. Miss. Mar. 27, 2013).

[74] ECF No. 91-1, at 3-5.

[75] ECF No. 48.

[76] ECF No. 69.

[77] ECF No. 73.

[78] *In re Cruz*, 663 B.R. 792, 795 (Bankr. D. Md. 2024) (holding that a notice of payment change "shall be . . . filed as a supplement to the holder's proof of claim"); *In re Garcia Rivera*, No. 15-07601 (ESL), 2018 WL 5281625, at *3 (Bankr. D.P.R. Oct. 22, 2018); *see also In re Tavares*, 547 B.R. 204, 213-14 (Bankr. S.D. Tex. 2016) (providing that Rule 3002.1(d) applies to allowed claims).

[79] *In re Sheppard*, No. 10-33959-KRH, 2012 WL 1344112, at *4 (Bankr. E.D. Va. Apr. 18, 2012) (holding that a notice of payment change must be filed as a supplement to the proof of claim); *In re Pittman*, No. CV 14-03404-HB, 2015 WL 1262837, at *2 (Bankr. D.S.C. Mar. 16, 2015).

[80] *In re Modikhan*, No. 1-19-46591-JMM, 2021 WL 5312396, at *17 (Bankr. E.D.N.Y. Nov. 15, 2021).

the movant to specify the new interest rate, and to either attach a copy of a rate change notice or explain why there is no notice attached.[81]

Here, U.S. Bank filed its Form 410S1 on January 30, 2026.[82] Debtor argues that the Notice of Payment Change provides that both the prior and current interest rates are 20%, and so the Notice of Payment Change fails to allege a *new* interest rate.[83] Debtor also argues that U.S. Bank failed to attach a rate change notice to the Notice of Payment Change and failed to explain why there was no notice attached.[84] Although it is true that there was no rate change notice attached to the Notice of Payment Change, the Note clearly provides for an interest rate of 5.49%,[85] whereas in its Notice of Payment Change, U.S. Bank alleges the interest rate should be 20%.[86] Therefore, U.S. Bank did not fail to specify a new interest rate. Thus, Debtor's objection to the Notice of Payment Change cannot be sustained solely on Debtor's allegation that U.S. Bank failed to allege an interest rate change.

### 4. Whether the Note's interest rate of 5.49% should apply

#### a. Whether the default interest rate applies because U.S. Bank is undersecured

11 U.S.C. § 506(b) provides that: "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim . . . ."[87] The Fifth Circuit held in *In re Southland* that "when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest."[88] Additionally, in the Fifth Circuit, a presumption exists that oversecured

---

[81] *Official Form 410S1 Notice of Mortgage Payment Change*.
[82] ECF No. 73.
[83] ECF No. 79, at 3.
[84] ECF No. 79, at 3.
[85] ECF No. 91-1, at 8.
[86] ECF No. 73.
[87] 11 U.S.C. § 506(b).
[88] *Southland Corp. v. Toronto-Dominion (In re Southland Corp.)*, 160 F.3d 1054, 1059 (5th Cir. 1998).

creditors are entitled to contractual default interest "unless 'the higher rate would produce an inequitable result.'"[89]

Here, the Note provides for an interest rate of 5.49%, with a default interest rate of 20%.[90] U.S. Bank argues that under *In re Southland*, because Debtor defaulted and U.S. Bank's Claim is oversecured, the Note's contractual default interest rate should apply.[91] But Debtor argues U.S. Bank is actually undersecured because "Debtor's homestead is valued as $200,000.00, the property tax owed to Jefferson Parish is $2,834.49 and the debt owed to U.S. Bank is $223,415.18. As Jefferson Parish has a senior lien over U.S. Bank, U.S. Bank is undersecured by amount of $26,249.67."[92] U.S. Bank points to no evidence showing that its Claim is oversecured.[93] Thus, U.S. Bank has failed to show that it is oversecured and owed the Note's default rate. Therefore, U.S. Bank is not entitled to the Note's default interest rate, and the confirmed Plan's interest rate of 5.49% will apply.

### b. Whether the solvent-debtor exception applies

Under 11 U.S.C. § 502(b)(2), creditors are not entitled to interest on unsecured claims. But under the solvent-debtor exception, unsecured creditors of a solvent debtor *are* entitled to receive post-petition interest on their claims.[94] The Fifth Circuit held that "[w]hen a debtor proves solvent—that is, when the debtor's assets exceed its liabilities—bankruptcy's ordinary suspension of post-petition interest is itself suspended. When a debtor can pay its creditors interest on its unpaid obligations in keeping with the valid terms of their contract, it must."[95]

Here, Debtor argues that his liabilities exceed his assets because he has only $162,535.80

---

[89] *Id.* at 1059-60 (quoting *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 75 (5th Cir. 1992)).
[90] ECF No. 91-1, at 8-9.
[91] ECF No. 105, at 4; *Southland Corp. v. Toronto-Dominion*, 160 F.3d at 1060.
[92] ECF No. 106, at 2-3.
[93] ECF No. 105.
[94] *In re Ultra Petroleum Corp.*, 51 F.4th 138, 150 (5th Cir. 2022).
[95] *Id.*

in assets and under the Note's terms he still owes U.S. Bank $605,512.59.[96] Therefore, Debtor argues, he is insolvent and U.S. Bank is not entitled to the Note's default interest rate of 20% under the solvent-debtor exception.[97] U.S. Bank has not provided any evidence showing that Debtor is solvent.[98] Thus, U.S. Bank is not entitled to the Note's default interest rate of 20% under the solvent-debtor exception.

Ultimately, U.S. Bank failed to meet its burden of proving the Notice of Payment Change's validity because although U.S. Bank specified an interest rate change in its Notice of Payment Change, *res judicata* prevents re-litigation of the confirmed Plan, the Notice of Payment Change is invalid because it supplements a disallowed claim, the Plan's mortgage interest rate of 5.49% is allowable because U.S. Bank's Claim is undersecured and so the Note's default interest rate of 20% does not apply, and the solvent-debtor exception does not apply.

Thus, for the reasons stated herein, Gerald Joseph Dimes's objection to U.S. Bank Trust National Association's notice of mortgage payment change is sustained, and Gerald Joseph Dimes's monthly mortgage payment that he owes to U.S. Bank Trust National Association will remain at the confirmed chapter 13 plan amount of $907.46, with an interest rate of 5.49%.

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Thursday, June 18, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

---

[96] *See* ECF No. 91-7, at 6.
[97] ECF No. 106, at 3.
[98] *See generally* ECF No. 105.